# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal Case No. RDB-17-0250 |
| BHUPESH WADHAWAN | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On June 22, 2017, Defendant Bhupesh Wadhawan ("Wadhawan" or "Defendant") pleaded guilty to one-count of Bribery, in violation of 18 U.S.C. § 201. Prior to Defendant's sentencing, Defendant filed a Sentencing Memorandum objecting to his United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") calculation in his Presentence Investigation Report ("PSR"). (ECF No. 15.) Specifically, Defendant objected to the calculation of the loss amount for sentencing guidelines purposes. Sentencing was held on October 11, 2017, and for the reasons set forth on the record and more specifically set forth below, this Court sustained Defendant's objection and changed the loss figure pursuant to U.S.S.G. § 2B1.1 cmt. n.3(E)(i).

## BACKGROUND

In December of 2006, the Defendant Wadhawan, a naturalized American citizen, founded Link Solutions, Inc. ("LSI") and became owner and Chief Executive Officer. (PSR,

1

ECF No. 14 at ¶ 7.)[1] Defendant submitted certifications to the United States Small Business Administration ("SBA") in order for LSI to qualify for the SBA's 8(a) program. Small Business Act, Pub. L. No. 83–163, 67 Stat. 232 (1953) (codified at 15 U.S.C. §§ 631-57); (ECF No. 17 at 1; ECF No. 17-1.) The Section 8(a) program is designed to "combat the pervasive effects of discrimination that have historically prevented small, minority-owned businesses from competing on equal footing in the mainstream business economy." *Cognitive Prof'l Servs., Inc. v. U.S. Small Bus. Admin.*, _ F.Supp.3d _, 2017 WL 1968260, at *2 (D.D.C. 2017). To become 8(a) certified, a business must be able to satisfy certain criteria set forth by the SBA. *Id.* LSI successfully became a certified 8(a) company. (ECF No. 14 at ¶ 14.)

Beginning in September of 2009, Defendant began directly or indirectly giving, offering, and promising benefits to a civilian information technology professional at the U.S. Army Public Health Command ("USAPHC") in exchange for favorable treatment of Defendant and his business interests in a contract with the United States ("the contract"). (ECF No. 14 at ¶ 9.) As a result, the USAPHC professional ensured through various steps that LSI received the contract. (*Id.* at ¶¶ 9-60.) The Government and the Defendant have stipulated that by July of 2016, LSI had received approximately $36,929,658.37 in payments from the United States under the contract. (*Id.* at ¶¶ 19, 60.) It is further stipulated that the actual profit on the contract was $2,215,779. (*Id.* at ¶ 77; ECF No. 15 at 17; ECF No. 17 at 10.)

Prior to sentencing, Defendant submitted a Sentencing Memorandum objecting to the Guidelines calculation in his PSR, which calculated the loss to be the total amount of the

---

[1] The facts from the Defendant's PSR were agreed to by the parties. (ECF No. 14 at ¶ 6.)

contract, i.e. $36,929,658.37. (ECF No. 15.) At sentencing on October 11, 2017, this Court heard argument on this guideline issue.

## ANALYSIS

According to the Guidelines, Defendant's base offense level is twelve (12). U.S.S.G. § 2C1.1(a)(2). The Guidelines enhance this base offense level depending on the amount of "loss" Defendant's fraud caused to the victim, the Government. U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1). To calculate loss under §2B1.1(b)(1), there are two relevant comments in the Guidelines' Application Notes. The first is a "Special Rule" concerning "Government Benefits" ("Government Benefits Rule"), which states that "[i]n a case involving government benefits . . ., loss shall be considered to be not less than the value of the benefits obtained by unintended recipients or diverted to unintended uses." U.S.S.G. § 2B1.1(b)(1), cmt. n.3 (F)(ii). The second is a note added to the Guidelines in 2001, titled "Credits Against Loss" ("Credits Against Loss Rule"). U.S.S.G. § 2B1.1 cmt. n.3(E)(i). The Credits Against Loss Rule states that "[l]oss shall be reduced by the following . . . [t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant . . .." *Id.*

Defendant's PSR calculated the loss value at $36,929,658.37, the total amount of the contract pursuant to which the United States paid LSI. (ECF No. 14.) Accordingly, Defendant's base offense level increased by twenty-two (22) levels. (*Id.*) Defendant objected to this loss calculation on the ground that it ignored the Credits Against Loss Rule. (ECF No. 15). Applying this rule, the loss value would be the amount Defendant's company

received from the United States minus the fair market value of the services rendered, $2,215,779, and Defendant's base offense level would increase by sixteen (16) levels. (*Id.*)[2]

The Government's Response to Defendant's objection was three fold: (1) the PSR's calculation was consistent with Fourth Circuit precedent, *United States v. Bros. Constr. Co. of Ohio*, 219 F.3d 300 (4th Cir. 2000); (2) the United States District Court for the District of Columbia's review of the impact of the Small Business Jobs Act of 2010, Pub. L. No. 111-240, 124 Stat. 2504 (2010) on loss in *United States v. Singh*, 195 F.Supp.3d 25 (D.D.C. 2016) is instructive; and (3) the Credits Against Loss rule added in 2001 does not alter the outcome in *Brothers Construction* or the plain language of the Government Benefits rule. (ECF No. 17.)

The Government's reliance on *Brothers Construction* and *Singh* is misplaced for multiple reasons. First, the cases are distinguishable on their facts. In *Brothers Construction*, the defendant received a contract for a project and falsely certified that a disadvantaged business entity (DBE) was performing part of the work on the contract. 219 F.3d at 305-07. Similarly in *Singh*, the fraudulent scheme involved falsely representing that an 8(a) certified company was working on a contract while in fact another company was actually performing the work. 195 F.Supp.3d at 27-28. In this case, there is no dispute that LSI was a certified Section 8(a) minority business enterprise and performed the work under the contract.

In addition, *Brothers Construction* was decided prior to the United States Sentencing Guidelines Commission's addition of the Credits Against Loss Rule or the Small Business Jobs Act of 2010. As discussed above, the Credits Against Loss Rule states that "[l]oss shall be reduced by the following . . . [t]he money returned, and the fair market value of the

---

[2] At the sentencing hearing on October 11, 2017, the Government and the Defendant agreed to this figure as the actual profit figure of LSI.

4

property returned and the services rendered." U.S.S.G. § 2B1.1 cmt. n.3(E)(i). The Government Benefits Rule, unlike other provisions in the Guidelines, does not explicitly preclude crediting services rendered against loss. *Compare* (§ 2B1.1 cmt. n.3 (F)(ii)) *with* (§ 2B1.1 cmt. n.3(F)(v)). The Small Business Jobs Act of 2010, upon which the District of Columbia Court relied heavily in its opinion, "codified the presumption" that:

> In every contract ... which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract… whenever it is established that a business concern *other than a small business concern* willfully sought and received the award by misrepresentation.

15 U.S.C. § 6329(w)(1)(2012) (emphasis added). Neither party disputes that Defendant's business was an 8(a) small business.[3] Therefore, when "codifying the presumption" that the loss should be calculated as the whole amount of the contract, Congress specifically cut from that presumption small businesses. Since the addition of the Credits Against Loss Rule and the Small Business Jobs Act, the Fourth Circuit has not addressed whether the Credits Against Loss Rule applies to Government Benefits. *See United States v. Crummy*, __F.Supp.3d_, 2017 WL 1411461, at *6 n. 2 (D.D.C. 2017) (addressing the Government's reliance on *Brothers Construction* and explaining that the Fourth Circuit has not yet considered the impact of the Credits Against Loss Rule). Furthermore, the *Singh* decision was rejected

---

[3] The Government's argument that "[h]ad [Defendant] accurately disclosed these payments to [R.R.] he would have lost his 8(a) status and would not have been able to bid on 8(a) set-aside contracts" is unpersuasive on this point. (ECF No. 17 at 6.) The Government points to Defendant's failure in his certifications to the SBA to "provide the SBA with any agents, representatives, … and other parties (other than employees) receiving fees, commissions, or compensation of any kind for purposes of assisting the Participant in obtaining a Federal Contract." (ECF No. 17-1 at 2.) However, Defendant's bribery—for which he's been charged—does not alter the fact that his business met the requirements for the 8(a) program.

by another District of Columbia Court which found that "the statutory presumption does not displace the credits-against-loss rule." *Crummy*, 2017 WL 1411461.

Finally, four Courts of Appeals have concluded that credits against loss should be subtracted to determine a defendant's loss value. *United States v. Near*, __ Fed. App'x. __, 2017 WL 3868019, at *10 (11th Cir. 2017) (finding "textual support in the Guidelines for crediting the value of services against losses under the Government Benefits Rule," and therefore, the defendant's loss value was zero because the Government received the full benefit of its bargain); *United States v. Martin*, 796 F.3d 1101 (9th Cir. 2015) (finding that for a defendant who "fraudulently obtained government contracts by misrepresenting her assets to qualify for programs designed to aid disadvantaged businesses," "it would be unjust to set the loss resulting from her fraud as the entire value of the contracts"); *United States v. Harris*, 821 F.3d 589, 606 (5th Cir. 2016) ("Treating the loss amount under these circumstances as the difference between the contract price and the fair market value of services provided properly focuses the loss inquiry on the pecuniary impact on victims."); *United States v. Nagle*, 803 F.3d 167, 183 (3d Cir. 2015) ("[W]e see nothing … that convinces us that Notes 3(E)(i) and (F)(ii) do not work together to allow a credit for the full fair market value of the services rendered against the face value of the contracts.").

In light of Congressional and the Sentencing Commission's intent, shown through the small business carve out in the Small Business Jobs Act of 2010 and the addition of the Credits Against Loss Rule, in addition to four United States Courts of Appeals decisions, this Court finds that Defendant's loss value is calculated under § 2B1.1 by subtracting the fair market value of his services rendered from the face value of the contract. Accordingly,

Defendant's loss value is $2,215,779, representing the profit LSI received from the Government.

**CONCLUSION**

For the reasons stated above, and those set forth on the record, Defendant's objection to the Presentence Investigation Report was sustained and this Court changed the loss figure pursuant to U.S.S.G. § 2B1.1 cmt. n.3(E)(i)

Dated: October 16, 2017

_____/s/_____
Richard D. Bennett
United States District Judge